**JON FEINGERSH PHOTOGRAPHY, INC., Plaintiff,**

v.

**PEARSON EDUCATION, INC., et al., Defendants.**

Civil Action No. 11–5122.

United States District Court, E.D. Pennsylvania.

March 13, 2012.

Maurice Harmon, Harmon & Seidman LLC, Northampton, PA, Christopher Seidman, Harmon & Seidman LLC, Grand Junction, CO, for Plaintiff.

David W. Marston, Jr., Dana E. Becker, Ramin Afshar–Mohajer, Morgan, Lewis and Bockius LLP, Philadelphia, PA, Ramy E. Hanna, Morgan Lewis & Bockius LLP, Wilmington, DE, for Defendants.

### EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Jon Feingersh Photography, Inc. ("Feingersh") brings suit against Pearson Education, Inc. ("Pearson") and John Doe Printers 1–10 asserting claims for copyright infringement. Feingersh is a stock photography agency that granted Pearson, a publisher of education textbooks, limited licenses to use copies of its photographs in numerous educational publications. Feingersh alleges that Pearson engaged in copyright infringement of its photographs by using some without any permission, and by exceeding the permitted uses for others under the terms of the limited licenses. Before continuing with discovery, Pearson moves this Court to enter a protective order for categories of information that it deems confidential. Feingersh opposes the motion for entry of a protective order. For the reasons set forth below, I will grant the motion in part and deny it in part.

Federal Rule of Civil Procedure 26(c) provides that upon a showing of "good cause" a court may enter a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way...." The party seeking the protective order bears the burden of demonstrating the confidentiality of each document it seeks to protect. *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786–87 (3d Cir.1994). " 'Good cause' is established when it is specifically demonstrated that disclosure

will cause a clearly defined and serious injury." *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995). Some of the factors that courts may consider in evaluating whether "good cause" exists are:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

*Id.* These factors take into consideration "the strong public interest in open proceedings." *Id.* at 484.

Pearson seeks a protective order for the following three categories of information: 1) the print quantities and dates of Pearson's publications; 2) Pearson's non-public financial data; and 3) Pearson's sales and marketing projections. To support its motion, Pearson provides the declarations of William E. Hess, Senior Vice President & CFO of the Pearson School Group, and John Owen, Senior Vice President & CFO of the Higher Education Group at Pearson.

Pearson asserts that it maintains the confidentiality of its print quantities and dates of publications, and that this information should be protected because disclosure would reveal sensitive sales data and provide competitors with insight into how Pearson conducts its business. Specifically, Pearson argues that if actual print run numbers were revealed to the public, competitors would learn "Pearson's actual publication quantities for particular disciplines and grade levels, its publication cycle, and its sales strategies," which would give competitors access to Pearson's sales strategies and "undermine Pearson's

ability to compete in the market." Hess Decl. ¶ 5. As evidence that it maintains the confidentiality of print run numbers and dates, Pearson asserts that it regularly requires potential recipients of such information, including authors and printers, to sign non-disclosure agreements. Hess Decl. ¶ 9; Owen Decl. ¶ 9. Additionally, Pearson asserts that its preferred vendor agreements with photographers and stock photography agencies often contain non-disclosure provisions. Hess Decl. ¶ 9; Owen Decl. ¶ 9. Moreover, Pearson also limits employee access to this information and requires its employees to sign non-disclosure agreements. Hess Decl. ¶ 8; Owen Decl. ¶ 8.

Feingersh argues that print run quantities and dates should not be protected because prior to litigation this information was not kept confidential. On four separate occasions in 2010, Pearson disclosed print run quantities and dates to Feingersh without requiring or requesting that this information be kept confidential. *See* Ex. K. Similarly, in 2006, 2008, and 2009, Pearson revealed print run numbers and dates to several people, on several occasions, without any requirement that the information be kept confidential. *See* Exs. A–D. Additionally, Feingersh alleges that even if this information is deemed confidential, the public interest in disclosure far outweighs any private injury to Pearson. Feingersh asserts that Pearson not only infringed its copyrights, but has also engaged in a widespread practice of unlicensed use of other photographers' images. Feingersh argues that it is in the public interest to disclose print quantities because disclosure of this information will enable other photography licensors to determine whether Pearson has infringed their copyrights.

■ Pearson's disclosure of print run numbers and dates to Feingersh on four separate occasions, and to several other individuals, without requiring that this information be kept confidential, undermines Pearson's need to protect this information now that litigation has begun. However, assuming that the information that has not already been disclosed to Pearson is confidential, the public interest in disclosure of this information outweighs Pearson's interest in keeping

it confidential. "The sharing of information among current and potential litigants is furthered by open proceedings." *Glenmede*, 56 F.3d at 485. Thus, the Third Circuit has cautioned that "[f]ederal courts should not provide a shield to potential claims by entering broad protective orders that prevent public disclosure of relevant information." *Id.* Here, public disclosure of print run numbers and dates is highly relevant to other Pearson licensors because this information will likely aid them in determining if their copyrights have been infringed by Pearson. This public benefit outweighs the competitive harm that may come to Pearson with disclosure of this information. Therefore, I will deny Pearson's motion for entry of a protective order as to print quantities and dates.

Pearson also seeks to protect the confidentiality of its non-public financial data. The nonpublic financial data that Pearson seeks to protect is its revenue and expenses for particular publications, and its profitability on a per-publication basis. *See* Hess Decl. ¶ 6; Owen Decl. ¶ 7. Pearson asserts that this information would allow competitors to compete more effectively because it "reveals Pearson's sales strategies and its successes in certain segments of the market, as well as "its interest in growing market share for a particular textbook, course, or segment of the marketplace. . . ." Mot. 11–12. Additionally, Pearson contends that if competitors learned information about the actual royalty expenses realized per publication, they would be able to "improperly leverage Pearson's financial agreements with authors." Mot. 12.

■ Feingersh argues that this information should not be protected because Pearson has not adequately alleged harm. Moreover, Feingersh argues that some of the financial data at issue is very old or pertains to out of print books; thus, it is of little value to competitors. Pearson counters that it has alleged a clearly defined and serious injury. Additionally, Pearson contends that only one publication at issue dates back to 1995 and that the remaining publications have copyright dates that range from 2002 through 2011. Because Pearson has adequately alleged a strong privacy interest in this information, I will grant Pearson's motion for

entry of a protective order as to its non-public financial data; however, I will leave open the opportunity for Feingersh to challenge the confidentiality of specific information that it believes because of age, or other reason, is of limited value to Pearson's competitors.

Lastly, Pearson moves for entry of a protective order for its sales and marketing projections. Before launching a new educational program, Pearson conducts research to assess the need for a particular item and its financial feasibility, and makes sales and publication projections. Hess Decl. ¶ 7; Owen Decl. ¶ 6. "These projections include estimated unit sales over time; production, editorial, edition, royalty cost estimates; and estimated pricing levels and break-even targets." Mot. 13. Pearson contends that this information would improperly benefit competitors because it would reveal Pearson's market research, financial feasibility analyses, sales strategies, and interest in growing market share in a particular segment of the marketplace. Hess Decl. ¶ 7; Owen Decl. ¶ 6. Moreover, Pearson points out that if competitors freely received this information, Pearson would be at a disadvantage because it has devoted significant resources to the development of this research.

■ Feingersh alleges that Pearson has not adequately identified a serious harm that it would suffer if this information were made public. However, Pearson has produced more the enough evidence to show that if this information were released to the public it would have a significant detrimental effect on Pearson. Therefore, I will grant Pearson's motion for entry of a protective order as to its sales and marketing projections.

### ORDER

AND NOW, this 13th day of March, 2012, it is **ORDERED** that Defendant Pearson Education, Inc.'s Motion for Protective Order With Respect to Three Categories of Confidential Information (ECF. No. 24) is **DENIED in part** and **GRANTED in part** as follows:

238

- The motion is **DENIED** as to the print quantities and dates of Defendant's publications.

- The motion is **GRANTED** as to Defendant's non-public financial data without prejudice to Plaintiff to challenge the confidentiality of any specific document in this category at a later stage in litigation.

- The motion is **GRANTED** as to Defendant's sales and marketing projections.

Accordingly, it is hereby further **ORDERED** that documents containing Defendant's non-public financial data or sales and marketing projections shall be marked "CONFIDENTIAL," shall be used solely for the purpose of preparation and trial of this litigation and for no other purpose whatsoever, and shall not be disclosed to any person with the exception of the following individuals:

(1) the parties and counsel of record for the parties in this action;

(2) Judges, Magistrate Judges, law clerks and other personnel of the Court;

(3) Court reporters recording or transcribing testimony;

(4) duplicating or document management services retained by a party for purposes of copying documents or preparing exhibits for this action; and

(5) any mediator retained by the parties to mediate the case.

Individuals authorized to review confidential information pursuant to this Protective Order shall hold such confidential information in confidence and shall not divulge the confidential information, either orally or in writing, to any other person, entity or government agency, other than those listed above, unless authorized to do so by Court Order.

Counsel are authorized to designate as confidential any portions of deposition transcripts that discuss Defendant's non public financial data or Defendant's sales and marketing projections. Any portions of deposition transcripts so designated shall be subject to the terms of this Protective Order.

Upon termination of this action, unless counsel of record otherwise agree in writing, Plaintiff and Plaintiff's counsel shall assemble and return all materials designated as confidential information pursuant to this Order, including all copies, to Defendant within 30 days. This Protective Order shall survive the termination of this action ad continue in full force and effect.

The Court retains jurisdiction sua sponte to make such amendments, modifications, deletions, and/or additions to this Protective Order as the Court may deem necessary or appropriate.